UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY McWATTERS,

        Petitioner,

                              Civil No. 06-13870
v.                               Honorable David M. Lawson

JAN E. TROMBLEY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Larry McWatters was convicted in a Michigan court of raping and killing a seventy-four-year-old woman, and he was given concurrent life prison terms for these crimes. He is incarcerated at the Saginaw Correctional Facility in Freeland, Michigan and seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254. He contends that at his jury trial in the Wayne County, Michigan circuit court, the prosecution engaged in misconduct and presented insufficient evidence to support his second-degree murder conviction, and the trial court erred at sentencing. The warden has filed an answer contending that the claims are barred by procedural default, not cognizable on habeas review, and lack merit. The Court finds no merit in the petitioner's claims and therefore will deny the petition.

I.

Seventy-four-year-old Margaret Belinski was sexually assaulted and strangled to death at her home in Lincoln Park, Michigan on July 5, 1995. The identity of the perpetrator was not apparent at the time, but eventually the police investigation (with the help of DNA evidence) focused on the petitioner. He was arrested and charged with first-degree murder and two counts of first-degree criminal sexual conduct, and he was brought to trial in 2003. A jury convicted the

petitioner of one count of second-degree murder, Mich. Comp. Laws § 750.317, and two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(f). The facts of the case are summarized adequately by the Michigan Court of Appeals as follows:

> The victim, a seventy-four-year-old woman, was found dead in her house in 1995. The victim had been strangled to death with a lamp cord and belt, and had been beaten and raped both vaginally and anally. A county medical examiner testified at trial that strangulation generally takes at least four minutes of continuous pressure to kill the victim.
>
> The police obtained DNA samples from several suspects, but none had a DNA profile that matched the sperm found in the victim's body. Although defendant was considered a suspect from the early stages of the investigation, the police did not obtain a DNA sample from him until January 2002, and they did not receive the test results until January 2003. Defendant's DNA matched the sperm.
>
> In the summer of 2002, defendant confided in Larry Terlecki that he had killed an elderly woman. He told Terlecki that he broke into the victim's house to steal her money, and that he beat and strangled her after she startled him by waking up. He denied raping her. Terlecki did not immediately report this to the police, because he did not know about the victim's death and he did not know whether defendant was serious. Terlecki reported defendant's confession to the police in May 2003, after learning that the police were investigating a man he and Terlecki both knew.
>
> Defendant was charged with first-degree premeditated murder, first-degree felony murder, and two counts of first-degree CSC. The jury acquitted him of both theories of first-degree murder, but convicted him of second-degree murder and the two CSC charges.

*People v. McWatters*, No. 252102, 2005 WL 356266, at *1 (Mich. Ct. App. Feb. 15, 2005) (unpublished). The trial court subsequently sentenced the petitioner to concurrent terms of life imprisonment on each count.

The petitioner's direct appeals through the state courts were unsuccessful. The Michigan Court of Appeals affirmed his convictions and sentence on February 15, 2005, and the state supreme court denied leave to appeal in a standard order later that year. *See People v. McWatters*, 474 Mich.

856, 702 N.W.2d 583 (2005). The petitioner's timely-filed federal habeas petition in this Court is a reprise of his state court appellate briefs. He asserts the following six grounds for relief:

> I. The prosecution improperly vouched for witnesses and appealed to jury sympathy;
>
> II. The prosecution failed to present sufficient evidence to support the second-degree murder conviction;
>
> III. The imposition of concurrent life sentences constituted an abuse of discretion and was cruel and unusual punishment;
>
> IV. The trial court misapprehended the consequences of life sentences;
>
> V. The trial court improperly penalized the petitioner for his refusal to admit guilt; and
>
> VI. The trial court improperly sentenced the petitioner upon the belief that he was guilty of a first-degree murder.

The respondent opposes the petition, contending that the prosecutorial misconduct claims are barred by procedural default and all of the claims lack merit and do not warrant relief.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

      The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first asserts that he is entitled to habeas relief because the prosecution engaged in misconduct by vouching for Larry Terlecki's credibility and by appealing to jury sympathy for the victim. The state court of appeals reviewed these claims for plain error, finding that the petitioner did not object on these grounds at trial. The respondent contends that this claim is barred by procedural default.

The petitioner's main complaints are that the state prosecutor stated in his closing argument that witness Larry Terlicki, who said that the petitioner admitted killing an elderly woman during a burglary, "testified honestly and truthfully," Trial Tr., Vol. II, at 140; and the prosecutor mentioned

on more than one occasion that the victim was elderly and did not deserve to be murdered. The state appellate court found that these remarks did not imply special knowledge on the prosecutor's part and were fair comments on the evidence.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case," *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982), considering four factors: "(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial." *Bowling*, 344 F.3d at 512-13. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The prosecution's comments on Terlecki's credibility was not improper. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Improper vouching also occurs when the prosecutor argues evidence not in the record, *Martinez*, 981 F.2d at 871, or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing the perceived prestige of the prosecutor's office behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). The record discloses none of that in this case. The prosecutor's comment implied no special knowledge of or personal belief in Terlecki's credibility. It amounted to no more than an advocate's appeal to the jury to believe a witness whose past was sullied by his criminal record.

Nor were the comments relating to the victim's age improper. The state prosecutor did argue: "This 74 year old woman was by all means tortured," Trial Tr., Vol. II, at 138; and he asked "What justification and what excuse is there to treat a 74 year old woman the way that she was treated?," Trial Tr., Vol. II, at 145. However, as the state court of appeals noted, "[t]hese brief comments were not inflammatory, they did not blatantly appeal to the jury's sympathy, and they were based on the evidence that the victim, a seventy-four-year-old woman, was beaten, raped twice, and strangled." *McWatters*, 2005 WL 356266, at *2. This Court agrees and finds that they did not render the proceeding fundamentally unfair. *See Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643; *Byrd*, 209 F.3d at 529-30. The Court finds no basis, therefore, to issue a writ of habeas corpus on the first ground in the petition.

B.

The petitioner next argues that the prosecution failed to present sufficient evidence to support his second-degree murder conviction because the State failed to establish that he acted with malice. He contends that the circumstances of the killing, namely his alleged struggle with the victim when she awoke during the attempted robbery, reduced the offense to manslaughter. The state court of appeals denied relief on this claim, stating:

> The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. *People v. Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Case law has consistently held that the provocation must be adequate, namely, that which would cause a reasonable person to lose control. *Id.* In the instant case, there is no evidence of legally adequate provocation; on the contrary, the evidence showed that defendant broke into the victim's home to steal her money, and attacked her when she woke up and startled him. Without evidence of provocation, defendant's rage or irrationality during the killing cannot reduce the offense from murder to manslaughter. *Id.* at 519-520.

*McWatters*, 2005 WL 356266, at *2.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the

trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, a conviction for second-degree murder requires proof of: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *See People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 79-80 (2001). Under state law, the crime of murder may be reduced to manslaughter when the killing is the product of "hot blood" committed "in the heat of passion." *People v. Townes*, 391 Mich. 578, 590-91, 218 N.W.2d 136, 140-41 (1974). This mental state must be induced by "an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and [must be] the result of the temporary excitement, by which the control of reason was disturbed rather than of any wickedness of heart or cruelty or recklessness of disposition." *Maher v. People*, 10 Mich. 212, 219-220 (1862). Adequate provocation is defined in terms of the "reasonable person": "Case law has consistently held that the provocation must be adequate, namely, that which would cause a *reasonable person* to lose control." *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578, 582 (1998).

The state court of appeals held that there was no evidence of adequate provocation that would mitigate the crime of murder to manslaughter. The record certainly confirms that holding. The DNA evidence, as well as Larry Terlecki's testimony recounting the petitioner's admissions, established that the petitioner committed the crime. The brutality of the strangulation and the

circumstances of the crime, combined with the lack of evidence of reasonable provocation or other valid justification or excuse, established that the petitioner acted with the requisite intent to kill. The surprise a burglar encounters when his sleeping victim awakes, although indeed startling, does not constitute "provocation" under state law that reduces the seriousness of the ensuing killing. That was the petitioner's theory, and the state courts (and the jury) properly dispatched it. This Court finds that the state courts properly applied the *Jackson* standard, and habeas relief is not warranted on this claim.

C.

In a related argument, the petitioner claims that the evidence was insufficient to support a first-degree murder charge, and improperly allowing that charge to be considered caused the jury to return a compromise verdict of second-degree murder. The Supreme Court has recognized that the improper submission of a greater charge to the jury can violate the Due Process Clause even when the jury convicts of a lesser charge. *See Price v. Georgia*, 398 U.S. 323 (1970). Error in that instance is not harmless. This Court has held that a constitutional violation warranting habeas relief could occur if the jury is allowed to consider a greater charge not supported by sufficient evidence, even when a conviction of a lesser offense results. *See, e.g., Williams v. Jones*, 231 F. Supp. 2d 586, 594 (E.D. Mich. 2002) (holding that "if the trial judge's submission of the first-degree murder charge in the petitioner's trial violated the constitution, the error would not have been harmless because the jury may have improperly considered, and compromised from, a charge to which it never should have been exposed. To hold otherwise would constitute an unreasonable application of *Price*").

However, the Michigan Court of Appeals denied relief on this claim because it found that the charge of first-degree murder was supported by the evidence, and therefore the jury properly considered it. First-degree murder under state law requires proof of the elements of second-degree plus premeditation and deliberation, or showing that the murder was committed during certain felonies (including burglary and sexual assault) designated in the state statute. *See* Mich. Comp. laws § 750.316(1)(b); *People v. Aaron*, 409 Mich. 672, 717, 299 N.W.2d 304, 321 (1980). Sufficient evidence existed to convict the petitioner of the first-degree murder under either a felony-murder or a premeditated murder theory. The evidence at trial indicated that the petitioner broke into the victim's home to commit a robbery, that he physically and sexually assaulted her when she awoke, and that he strangled her to death before fleeing the scene. There was evidence that death by strangulation requires the application of strong pressure against the victim's airway for at least four minutes. With this evidence, a reasonable jury could have found that the petitioner killed the victim during the course of a felony and that he acted with sufficient premeditation and deliberation so as to intend to kill the victim. This Court concludes, therefore, that the state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law.

D.

The petitioner also raises several sentencing claims in his petition. First, he asserts that his concurrent life sentences are disproportionate and constitute cruel and unusual punishment. To the extent that the petitioner challenges the proportionality of his sentence, he fails to state a claim for habeas relief. Michigan law provides that there must exist proportionality between an offense and the sentence. *See People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1, 3 (1990) ("[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of

proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."). However, the United States Constitution "contains no strict proportionality guarantee," and therefore, a claim that the sentencing court violated Michigan law's principles of proportionality is not cognizable upon federal habeas review. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). It is well-settled that the Eighth Amendment "does not require strict proportionality between crime and sentence." *Harmelin*, 501 U.S. at 1001; *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Harmelin*, 501 U.S. at 1001.

The Michigan Court of Appeals denied relief on this claim finding that the petitioner was sentenced within the state judicial sentencing guidelines and his sentences are neither disproportionate nor cruel and unusual. *See McWatters*, 2005 WL 356266, at *3-4. This Court agrees. The petitioner's life sentences are within the statutory maximum penalties for second-degree murder and first-degree criminal sexual conduct in Michigan: life or any term of years. *See* Mich. Comp. Laws §§ 750.317; 750.520b(1)(f). Because the petitioner was convicted of second-degree murder and two counts of first-degree criminal sexual assault involving a 74-year-old woman, his concurrent parolable life sentences are not "grossly disproportionate" to the crime so as to constitute cruel and unusual punishment. Habeas relief is not warranted on this claim.

Second, the petitioner asserts that the trial court sentenced him to life in prison based on the erroneous assumption that he would be eligible for parole sooner than if he were sentenced to a term of years. The respondent contends that this claim lacks merit. The United States Supreme Court has held that a sentence may violate due process when it is pronounced "on a foundation [that was]

extensively and materially false, which the prisoner had no opportunity to correct." *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence.  The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence."  *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).

> The Michigan Court of Appeals denied relief on this claim, stating as follows:
>
> Defendant claims that the trial court sentenced him to life in prison based on the erroneous assumption that he would become eligible for parole sooner than if he were sentenced to a term of years in prison.  Defendant acknowledges that he will become eligible for parole review after fifteen years, but contends that he is unlikely to receive the review for thirty or forty years, and unlikely to ever be paroled.
>
> At sentencing, the trial court asked the prosecutor, "Life can be a shorter sentence than the sentence for a year, term of years, can it not?"  The prosecutor replied that a defendant sentenced to life in prison for second-degree murder would become eligible for parole in twenty years, but a defendant sentenced to a term of years would not become eligible until the minimum term of years had expired.  The trial court commented that a life sentence "in effect, affords an individual an opportunity to be considered for parole sooner than if he was given a sentence that exceeded 20 years." When the trial court sentenced defendant to life in prison, it commented that he would become eligible for parole review in twenty years.  The court stated:
>
>> [Defendant] will be brought before the Parole Board, they will review the whole circumstances [*sic*]. They may not let him out.  They probably won't for the first time around or maybe even the second or third time around.  If he acts up in prison, he may do the natural life. But at least he'll have the opportunity sometime in the distant future to maybe breathe air again in a free society.
>
> The trial court did not misunderstand the implications of its sentence.  MCL 791.234(6) provides that a prisoner serving a life sentence (except for specified offenses not applicable here) for a crime committed on or after October 1, 1992, is subject to the jurisdiction of the parole board and may be released on parole by the parole board after he has served fifteen years of his sentence. Except for erroneously indicating twenty years instead of fifteen (i .e., that the parole law was actually more favorable to defendant than the trial court realized), the trial court correctly recited

-13-

>the substance of this statute. Contrary to defendant's claim, the trial court did not indicate that it intended to achieve a strong likelihood of early parole. Instead, the trial court acknowledged that defendant was unlikely to be paroled at his first review, that he might not be paroled at the second or third review, and that he might never be paroled. Consequently, it is apparent that the trial court did not misunderstand the consequences of imposing a life sentence.

*McWatters*, 2005 WL 356266, at *4.

This determination of the Michigan Court of Appeals did not contravene or misapply Supreme Court precedent. Although the trial court and the parties discussed the parole possibilities associated with a life sentence and with a sentence for a term of years, the trial court did not indicate that it was imposing a life sentence (rather than a term of years) because it believed or desired that the petitioner would be released on parole at any particular time. Rather, the court expressed concern about the petitioner's eligibility for parole consideration and specifically acknowledged that the petitioner might never be released from custody. The petitioner has not shown that the trial court misunderstood the consequences of its sentencing decision in any material respect. Furthermore, the petitioner and his counsel had ample opportunity to correct any misunderstandings at the time of sentencing. The petitioner has thus failed to establish a violation of his due process rights. Habeas relief is not warranted.

Third, the petitioner asserts that the trial court improperly relied upon his refusal to admit guilt in imposing his sentence, a claim which the respondent contends lacks merit. In *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999), the Supreme Court held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime. The Supreme Court expressly declined to consider the questions whether a defendant's silence bore upon a court's determination of lack of remorse or upon a defendant's acceptance of responsibility

for the purpose of a downward departure under the federal Sentencing Guidelines, because those issues were not before the Court. *Id.* at 330. The United States Court of Appeals for the Sixth Circuit has affirmed a grant of the writ to a petitioner whose sentencing judge plainly took his failure to admit guilt into consideration in imposing his sentence. *See Ketchings v. Jackson*, 365 F.3d 509, 512-14 (6th Cir. 2004).

In this case, the Michigan Court of Appeals noted that the refusal to admit guilt is an improper sentencing consideration under state law, but denied relief on this claim, stating:

> [T]here is no indication that the trial court chose a life sentence because defendant would not admit guilt. Although the trial court commented on defendant's insistence that he was innocent, it did so in the context of comparing the weight of the incriminating evidence against defendant's claim of innocence and his family's belief in his innocence. The trial court did not penalize defendant for claiming innocence, instead, it explained why it found that claim unbelievable.

*McWatters*, 2005 WL 356266, at *5.

This Court agrees with the determination of the Michigan Court of Appeals. The trial court's comments, taken in context, suggest that the court was refuting the petitioner's and his family's assertions of his innocence and was not penalizing the petitioner for his refusal to admit guilt at sentencing. The record shows that the trial court imposed the concurrent life sentences based upon the nature and circumstances of the crime. Habeas relief is not warranted on this claim.

Lastly, the petitioner asserts that the trial court sentenced him to life imprisonment based upon a belief that he was guilty of first-degree murder. The respondent contends that this claim lacks merit. As noted previously, a sentence may violate due process when it is carelessly or deliberately pronounced on an extensive and materially false foundation that the petitioner had no opportunity to correct. *See Townsend,* 334 U.S. at 741.

The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant claims that the trial court made an independent finding that he was guilty of first-degree murder and sentenced him in accordance with this finding. Defendant has misread the trial court's statements. The trial court commented that defendant "did get a break that he probably isn't entitled to but he received it anyways." The court explained that under the law of felony murder, a murder committed during the commission of a CSC automatically elevates the murder from second-degree to first-degree, thus the jury disregarded the trial court's instructions when it found defendant guilty of CSC and second-degree murder, but acquitted him of first-degree felony murder. This explanation was an accurate statement of the law, and not an independent factual finding. *Watkins, supra* at 32.
>
> Moreover, the trial court did not sentence defendant based on its belief that he should have been convicted of first-degree murder, in disregard of the jury's verdict. The trial court commented that a defendant convicted of first-degree murder receives a mandatory life sentence without parole, in contrast to defendant, who would be eligible for parole review. The trial court did not depart from the judicial sentencing guidelines. There is no indication on the record that the trial court imposed a life sentence because it believed defendant should have been convicted of first-degree murder. In any event, a sentencing court may take into consideration aggravating factors that are supported by the evidence introduced at trial. In *People v. Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995), our Supreme Court upheld a trial court's decision to upwardly depart from the judicial guidelines when sentencing a defendant who had been convicted of manslaughter, based on evidence that the victim was repeatedly shot in the back. The Court rejected the defendant's argument that the sentence was improperly based on an independent finding that the defendant was actually guilty of first-degree murder, and stated instead that "the sentencing judge was making permissible inferences from the evidence introduced at trial." *Id* . This reasoning applies with greater force here, where there was no departure from the guidelines.

*McWatters*, 2005 WL 356266, at *5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The trial court sentenced the petitioner to concurrent terms of life imprisonment with the possibility of parole on his second-degree murder and first-degree criminal sexual conduct convictions. Under Michigan law, the maximum sentence for second-degree murder and for first-degree criminal sexual conduct is life imprisonment. *See* Mich. Comp. Laws §§ 750.317, 750.520b(1)(f). The petitioner's sentencing guideline range was 15 to 30 years

imprisonment, or life imprisonment. Thus, the trial court sentenced the petitioner within the statutory maximum and the state sentencing guidelines. The record does not demonstrate that the trial court imposed a life sentence based upon a belief that the petitioner was, or should have been, convicted of first-degree murder. Rather, the record indicates that while the trial court believed that the jury gave the petitioner a break by not finding him guilty of first-degree murder, the court imposed the concurrent life sentences due to the nature and circumstances of the crime. The petitioner has failed to establish that he was sentenced based upon a charge of which he was acquitted. *See Austin*, 213 F.3d at 303 (denying relief on similar claim). Habeas relief is not warranted.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

        s/David M. Lawson  
        DAVID M. LAWSON  
        United States District Judge

Dated:   May 11, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 11, 2009.

                                            s/Susan K. Pinkowski
                                            SUSAN K. PINKOWSKI